MEMPHIS PUBLISHING COMPANY, d/b/a the Commercial Appeal, and Michael Kerr, Petitioners–Appellants,

v.

CITY OF MEMPHIS, Tennessee and Shelby County, Tennessee, Defendants–Appellees.

Supreme Court of Tennessee, at Memphis.

Feb. 22, 1994.

S. Russell Headrick, Lucian T. Pera, Kathy Laughter Laizure, Armstrong, Allen, Prewitt, Gentry, Johnston & Holmes, Memphis, for petitioners-appellants.

Monice Moore Hagler, Brian L. Kuhn, Elbert Jefferson, Jr., Memphis, for defendants-appellees.

Joseph R. Mouer, the Metropolitan Government of Nashville and Davidson County, Charles W. Burson, Atty. Gen. and Reporter, Gina J. Barham, Deputy Atty. Gen., Nashville, amicus curiae.

## OPINION

DROWOTA, Justice.

The petitioners, Memphis Publishing Company (MPC) and Michael Kerr, appeal from the Court of Appeals' reversal of the Chancellor's judgment which granted them access to certain unfiled deposition transcripts in the possession of attorneys representing the City of Memphis and Shelby County. We granted MPC's Rule 11 application to consider two issues: 1) whether the deposition transcripts, which were taken by counsel for the City and County in a bankruptcy action in which the City and County are parties, are "state, county, or municipal records" within the meaning of Tenn.Code Ann. § 10–7–503, and are therefore open to public inspection; and 2) whether the City and the County knew that the deposition transcripts were public records and willfully refused to disclose them, thereby entitling the petitioners to attorneys' fees and costs pursuant to Tenn.Code Ann. § 10–7–505(g).

## THE FACTS

The facts of this case are not disputed. The City of Memphis and Shelby County retained attorney Harris Quinn to represent their interests as creditors in the bankruptcy proceedings styled *In Re: The Great American Joint Venture* filed in the United States Bankruptcy Court for the Western District of Tennessee. During the course of these proceedings, Quinn deposed certain officers of the debtor corporation, as well as officials of the City, the County, and Memphis State University. These depositions were transcribed, and copies were apparently sent to Quinn's law firm.

MPC, a Delaware-based corporation that publishes the *Commercial Appeal,* and Kerr, an assistant editor of the newspaper, subsequently demanded access to the deposition transcripts. When the City and the County refused, MPC brought an action in the Shelby County Chancery Court, asking the Chancellor to declare that the deposition transcripts were public records under Tennessee Public Records Act, Tenn.Code Ann. §§ 10–7–503—505, and that the defendants' refusal to turn over the transcripts constituted a violation of the Act. MPC also requested that the Chancellor award its costs, including attorneys' fees, pursuant to § 10–7–505(g). At no time did the City or the County seek a protective order for the depositions.

After a hearing, the Chancellor ruled in favor of MPC, holding that the transcripts did constitute public records within the meaning of the Act; the Chancellor also awarded MPC the costs incurred in enforcing its rights under the Act. The City and the County then appealed to the Court of Appeals; they contemporaneously filed a motion to stay the judgment, which was granted by the Court of Appeals.

The Court of Appeals reversed the Chancellor's judgment. After reviewing several decisions construing § 10–7–503 of the Public Records Act, the Court concluded that the term "records" in the Act referred to "documents created by a governmental agency in the course of its duties as a governmental agency." The Court then examined the nature of the asserted "record" in the case—the discovery deposition. After noting that depositions have been traditionally viewed as nonpublic components of litigation, the Court observed that the rules governing depositions permit the parties to discover a wide range of information—some of which may be only tangentially related to the underlying action. The Court stated that this information, while of only marginal value for discovery pur-

poses, could be damaging to the parties' reputations if disseminated to the public. With these considerations in mind, the Court analogized the unfiled deposition transcripts to the work product of a government attorney preparing for litigation, and therefore concluded that the transcripts were not documents that had been created in the normal course of the City and County's duties as governmental agencies. The Court also determined that MPC was not entitled to recover its costs. We granted MPC's application for permission to appeal to address these important issues.

## I.

■ The public's right of access to records of governmental agencies under the Public Records Act is very broad. Tenn.Code Ann. § 10–7–503(a) declares

All state, county and municipal records and all records maintained by the Tennessee performing arts center management corporation, except any public documents authorized to be destroyed by the county public records commission in accordance with § 10–7–404, shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law.

Moreover, in § 10–7–505—the section setting out the procedure for obtaining judicial review of a government agent's decision to deny access to records of the agency—the Legislature unequivocally stated its intention to open governmental activity to public scrutiny: "[t]he court ... shall be empowered to exercise full injunctive remedies and relief to secure the purposes and intentions of this section, and this section shall be broadly construed so as to give the fullest possible

public access to public records." Tenn.Code Ann. § 10–7–505(d). This section expressly sets up a presumption of openness to records of governmental entities; the burden is placed on the governmental agency to justify nondisclosure of the records. § 10–7–505(c). The Public Records Act does not, of course, provide that all governmental records are open to inspection by the public; § 10–7–504 and the statutes cross-referenced thereunder contain a specific list of confidential records that are not open for inspection by the public.

A review of the appellate decisions concerning the Public Records Act reveals that our courts have been vigilant in upholding this clear legislative mandate, even in the face of serious countervailing considerations. The first decision construing § 10–7–503, *Board of Educ. of Memphis City Schools v. Memphis Publishing Co.*, 585 S.W.2d 629 (Tenn.App.1979), concerned an attempt by the *Commercial Appeal* to gain access to applications for the position of Superintendent of the Memphis City Schools held by the City's board of education. Although the trial court held that the applications were not "records," the Court of Appeals reversed. The Court began its analysis by stating that the "public records law"[1] represented an attempt by the Legislature to "cover all printed matter created or received by government in its official capacity and whether intended to be retained temporarily or retained and preserved permanently." 585 S.W.2d at 630. The Court then observed that the legislation contemplated three different types of "records": 1) traditional public records, such as filed court records and land title records[2]; 2) agency records open to public inspection[3]; and 3) confidential agency records specifically excepted from public inspection[4]. The Court inferred that the

---

1. The "public records law" term was used by the *Board of Education* Court to denote the entire body of legislation pertaining to public records; it was codified at Title 15 of the Code, and is now codified at §§ 10–7–101—10–7–509. The "Public Records Act," by contrast, refers only to the sections of Title 10, Chapter 7 that deal with public access to governmental records; these sections are codified at § 10–7–503–505.

2. These records were dealt with in §§ 15–101—210; these sections are now codified at §§ 10–7–101—10–7–210.

3. These records were dealt with in § 15–304; this section is now codified at § 10–7–503.

4. The confidential records were dealt with in § 15–305; this section is now codified at § 10–7–504.

Legislature intended the "agency" records provision to be broader than the traditional concept of public records because the Legislature chose to except certain agency records from inspection, such as the records of state medical patients, and these records had never been considered "public" under the traditional definition. The Court also emphasized that the Act provided that all agency records be open for inspection unless they were specifically excepted. Once the Court determined that the Legislature intended to open to the public a class of governmental records much broader than traditional public records, it had little difficulty concluding that the applications constituted "records" because the applications had been taken by the Board in its official capacity.

This Court's commitment to the policy of openness of all governmental records in the absence of a specific exception was tested seven years later in *Memphis Publishing Co. v. Holt,* 710 S.W.2d 513 (Tenn.1986). In *Holt,* the *Commercial Appeal* sought access to a *closed* investigative file of the Memphis Police Department concerning the "Shannon Street Incident"—a confrontation between police officers and occupants of a household in which a police officer was taken hostage and eight persons were killed. After the police department denied access, the *Commercial Appeal* brought an action to compel disclosure; it received favorable judgments in both the trial court and the Court of Appeals.

Despite forceful arguments from the police department and various *amicus curiae* that subjecting such files to public scrutiny would result in greater reluctance of witnesses to criminal activity to talk with authorities, and to a concomitant reduction in the effectiveness of law enforcement, this Court refused to create a public policy exception to the legislative mandate of access. After noting that the investigative files of the Tennessee Bureau of Investigation and the Motor Vehicle Enforcement Division of the Department of Safety, and the books, papers and materials of the Attorney General were included in the § 10–7–504 list of excepted records, but that the investigative files of municipal police departments were not, we stated

It is the prerogative of the legislature to declare the policy of the state touching the general welfare. [citation omitted]. And where the legislature speaks upon a particular subject, its utterance is the public policy of the state upon that subject. [citation omitted]. When T.C.A. § 10–7–503 was passed by the 1957 legislature, it provided that "[a]ll state, county and municipal records" shall be open for inspection "unless otherwise provided by law or regulations made thereto." In 1984 the legislature amended the statute to provide that "[a]ll state, county and municipal records" shall be open for inspection "unless provided by state statutes." By this amendment the legislature reserved to itself alone the power to make public policy exceptions to T.C.A. § 10–7–503 for municipal law enforcement files. "Where .. the intent of the legislature appears clear upon consideration of the natural and ordinary meaning of the statutory language, it is not the office of this Court either to extend or limit the language's import, regardless of how we may perceive the equities of the cause." [citation omitted].

710 S.W.2d at 517.

Although we declined in *Holt* to create a public policy exception for the files of law enforcement agencies, our decision in *Appman v. Worthington,* 746 S.W.2d 165 (Tenn.1987) demonstrated that certain investigative files could be withheld from the public even when a specific exception under § 10–7–504 did not exist. In *Appman,* an inmate in a state correctional facility was killed by fellow inmates, and subsequently murder charges were brought against the inmates. The attorneys for the defendant-inmates sought access to the correctional facility's investigative files of the incident, but the facility refused to relinquish the files. The defense attorneys then filed a petition for access under § 10–7–505 of the Public Records Act. The trial court ruled in favor of the correctional facility on the basis of Rule 16(a)(2) of the Tennessee Rules of Criminal Procedure, which provides that "reports, memoranda, or other internal state documents" prepared in connection with the investigation or prosecution of a criminal

case are not available for inspection by the defendant. The Court of Appeals reversed that judgment, however, holding that "Rule 16 relates only to the rights and duties of the parties to a criminal case as to discovery from each other, and not the rights of citizens to access to public records." 746 S.W.2d at 166.

We reversed the judgment of the Court of Appeals. While it was clear that the files constituted "records" under the Act, and that § 10–7–504 did not specifically except the internal records of correctional facilities, we held that Rule 16—a court rule which had been adopted by a joint resolution of the Legislature, thereby giving it the force of law—served to except the records from the general rule requiring disclosure. In so doing, we made clear that although § 10–7–504 does not contain an exhaustive list of exceptions to the general rule, any exception must be supported by a specific source of authority.

The Court of Appeals again had the opportunity to consider the scope of § 10–7–503 in *Creative Restaurants, Inc. v. City of Memphis,* 795 S.W.2d 672 (Tenn.App.1990). In *Creative Restaurants,* the City of Memphis leased certain property on Beale Street to the Beale Street Development Corporation (BSDC), an organization devoted to preserving the historic and cultural value of the Beale Street area. BSDC leased the property to Beale Street Management Corporation (BSMC), who in turn leased it to several private subtenants. At some point the City requested its attorney, Greg Foster, to collect the leases and to prepare an analysis of the economic feasibility of the leases. The *Commercial Appeal* sought access to these subleases, some of which were in the possession of Foster, and some of which were in the possession of BSMC. When the City refused to grant access, the newspaper filed a petition in the chancery court; the Chancellor ruled in favor of the newspaper, and the Court of Appeals affirmed.

While the Court of Appeals acknowledged that releasing the leases to the public would lessen the City's competitive advantage in the real estate market, it had little trouble holding that the leases in the possession of

BSDC constituted records subject to inspection under § 10–7–503. The Court appeared to have a more difficult time, however, with the status of the leases in the possession of Foster, the city attorney. While stating that the leases were clearly documents in the hands of the City's agent, the Court proceeded to discuss a Michigan case, *Hoffman v. Bay City School District,* 137 Mich.App. 333, 357 N.W.2d 686 (1984), which was cited by the City for the proposition that the work product of a city attorney is not a record open for inspection by the public. The Court stated that the situation might be similar to *Hoffman* if the city attorney had in fact completed his analysis on the leases but had not submitted the report to the City. Because the attorney had not completed the report, the Court concluded that the leases did not constitute work product but were public documents placed in his possession and thus were subject to public inspection.

The final Public Records Act decision warranting discussion is *Griffin v. City of Knoxville,* 821 S.W.2d 921 (Tenn.1991). In *Griffin,* officers from the Knoxville Police Department were summoned to investigate the death of state representative Ted Ray Miller, whose body had been discovered in the bedroom of his home. During the investigation, the officers observed three handwritten notes on the kitchen counter; one of the officers examined the notes and concluded that they had been written by Miller. After examining the physical evidence found at the home, both officers concluded that the cause of Miller's death was suicide. The officers then took the notes back to the station and made copies; the originals were later returned to Miller's widow.

A local television station later requested access to the notes, which was denied by the police department. The station brought suit seeking access, and the trial court held in favor of the station, stating that because the notes had been used to substantiate the officers' conclusion that the death was a suicide, the notes were records subject to public inspection. The Court of Appeals reversed that judgment, holding that since the officers did not rely on the notes in reaching their conclusions about the cause of death, but

merely took custody of the notes for purposes of safekeeping, the notes were not used as evidence in the investigation and hence were not part of the official police investigation.

We reversed the judgment of the Court of Appeals. After citing Tenn.Code Ann. § 10–7–301(6) and *Board of Education, supra,* for the proposition that a "record" subject to public inspection was any material "made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency," 821 S.W.2d at 923, we rejected the "evidence test" formulated by the Court of Appeals. In rejecting this test we determined that the gathering of evidence was as much a part of official police business as making mental conclusions as to the cause of a death; and we concluded that the "[adoption] of such a narrow test would unnecessarily restrict access to genuinely public documents and would be contrary to the declared legislative purposes underlying the Act." *Id.* at 924.

■ With these decisions in mind, we must agree with MPC that the Court of Appeals defined the term "records" too narrowly when it stated that the term referred to "documents *created* by a governmental agency in the course of its duties as a governmental agency." [5] This definition does not account for the fact that previous decisions, namely *Board of Education* and *Griffin,* have stated that the term "record" in § 10–7–503(a) includes material made or *received* in connection with the transaction of official business. The applications taken by the Board of Education of the Memphis City Schools arguably were not "created" in the course of that entity's official business, and the handwritten notes held to be public records in *Griffin* clearly were not "created" in the course of the Knoxville Police Department's business, as the Court of Appeals used that term. Moreover, this restrictive definition does not comport with the Legislature's mandate that the Act shall be construed as broadly as possible to ensure public access to governmental records. Tenn.Code Ann. § 10–7–505(d).

■ With the proper expansive definition of "records" in mind, and in view of the fact that § 10–7–504 does not specifically except these documents from public view, we cannot say that these deposition transcripts are not material "made or received in connection with the transaction of official business" of these entities. The City and County took these depositions in a bankruptcy proceeding in an attempt to protect a substantial public investment in a large construction project. Given the broad construction placed on the above-quoted phrase in *Griffin,* and the liberal access provisions of the Act, the "official business" of the City and County cannot be interpreted so as to exclude legal action aimed at protecting the legitimate economic interests of those governmental entities.

■ Given this holding, we must necessarily reject the argument propounded by the City and County that the proper legal status of the deposition transcripts depends upon whether they are filed with the bankruptcy court. As discussed above, our Court of Appeals' decision in *Board of Education* recognized that the Act dealt with two principal groups of records: 1) traditional public records, or documents filed with a court; and 2) agency records, a class different from, and considerably broader than, traditional public records. The traditional public records, which are primarily intended to apprise the public about the status of land titles, the existence of judgments, and so forth, are by definition not accessible to the public unless they have been filed in a court. On the other hand, the agency records, which are available to apprise the public about the goings-on of its governmental bodies, are accessible at

---

**5.** The Court of Appeals' emphasis on the term "create" in the definition of "record" seems to mirror the concept of "business records" in Rule 803(6) of the Tennessee Rules of Evidence. That rule provides:

A memorandum, report, record, or other data compilation in any form of acts, events, conditions, opinions or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation ...

any time unless specifically excepted. This dichotomy and its legal consequences were affirmed in *Creative Restaurants, supra,* where the Court of Appeals noted that if § 10–7–503 (agency) records were required to be public in the traditional sense, all of the Public Records Act cases would have been wrongly decided; this conclusion would also hold true for our 1991 *Griffin* decision. Because a contrary holding would subvert the Legislature's intention to open agency records for public inspection, we hold that § 10–7–503 does not require that a deposition be filed in the court before the public has a right to inspect it.[6]

 Finally, we cannot agree with the Court of Appeals' conclusion that the similarity of the deposition transcripts to attorney work product excepts them from inspection by the public. Section 10–7–504(a)(5)(A)(iii) excepts from public inspection "the work product of the attorney general and reporter or any attorney working under the attorney general and reporter's supervision and control." Because we have approved the Court of Appeals' reasoning in *Board of Education* that the inclusion in § 10–7–504 of a document implies that the document would be a record but for the exception, it is evident that the work product of governmental attorneys is considered a record under the Act. Although it is not readily apparent why the Legislature chose to except the work product of the Attorney General from public inspection while failing to except the work product of municipal and county attorneys, this omission cannot be regarded as a mistake, for certainly the Legislature was aware that municipal and county attorneys regularly engage in litigation when it passed the Act. Moreover, under our analyses in *Holt* and *Griffin,* we are precluded from inquiring into the Legislature's rationale for designating some records as confidential while opening others for inspection. Therefore, the Court of Appeals' analogy of the deposition transcripts to attorney work product does not serve to except the transcripts from public inspection.

One argument advanced by the City and County and *amicus curiae* with respect to the Court of Appeals' work product analogy does raise potential problems. The City and County argue that the legislative classification of the work product of attorneys representing municipalities and counties as records under the Act would have the effect of destroying, or at least greatly impairing, the attorneys' ability to fulfill Canon 4 of the Code of Professional Responsibility, which mandates that the attorney not betray the confidences and secrets of a client. The City and County further argue that this violates the separation of powers clauses of the Tennessee Constitution, Article II, Sections 1 and 2, because the state judiciary possesses the inherent right to set rules to regulate attorneys practicing within its jurisdiction.

We believe that these contentions are, in the abstract, valid ones. It is certainly true that the Legislature is forbidden from destroying an attorney's ability to fulfill his ethical duties to a client. In *Smith County Educ. Ass'n v. Anderson,* 676 S.W.2d 328 (Tenn.1984), we held that a provision of the Tennessee Open Meetings Act[7] which prohibited a public body from holding private meetings could not be construed to prevent a public body from meeting in private with its attorney to discuss pending litigation. If the statute were so construed, we stated, the attorney's ability to fulfill his duty not to reveal its client's secrets would be destroyed.

---

**6.** The City and County cite a number of decisions, including *Seattle Times v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), *Herald Ass'n, Inc. v. Judicial Conduct Board,* 544 A.2d 596 (Vt.1988), *Palm Beach Newspapers, Inc. v. Burk,* 504 So.2d 378 (Fla.1987), and *Lewis R. Pyle Memorial Hospital v. Superior Court of Arizona,* 149 Ariz. 193, 717 P.2d 872 (1986), for the proposition that the public is not entitled to view unfiled deposition transcripts. Almost all these decisions, however, deal with the issue of whether the public possesses a constitutional or common-law right of access to pretrial discovery, an inquiry that is very different from the issue of whether Tennessee citizens are entitled to view unfiled deposition transcripts under the broad provisions of our Public Records Act. In *Burk,* the one opinion that did address the issue under state "open records" legislation, a four-member majority of the Florida Supreme Court dismissed the issue with less than one page of discussion. Moreover, this holding drew a dissent in *Burk.*

**7.** Tenn.Code Ann. § 8–44–101 et seq.

These same considerations apply to attorney work product. If the client were aware that its secrets, embodied in its attorney's internal memoranda or other documents, were subject to public scrutiny, it would limit the client's willingness to speak openly with the attorney, and would therefore adversely affect the attorney's ability to represent his client.

 However problematic these considerations may be in the abstract, they are not present in this case because a discovery deposition cannot be classified as attorney work product. The work product doctrine is designed to prevent one party from discovering materials prepared in anticipation of litigation by the other party's attorney; the rule thereby prohibits the party from learning of the adversary's mental impressions, conclusions, and legal theories of the case. Tenn. R.Civ.P. 26.02(3); *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Medic Ambulance Service, Inc. v. McAdams*, 216 Tenn. 304, 392 S.W.2d 103 (1965); Charles A. Wright and Arthur Miller, Federal Practice and Procedure § 2024 (1970 and 1993 Supp.). Because the work product doctrine is grounded in the attorney's right to conduct the client's case with a certain degree of privacy, these materials are cloaked with a veil of confidentiality. A deposition, by contrast, is inherently a public event, at least in the sense that the opposing party is present when the testimony is taken. And there is nothing, other than a protective order, to prevent the opposing party from disseminating the information he or she learns at the deposition. Therefore, a discovery deposition does not carry with it the requisite attribute of confidentiality needed to classify it as attorney work product. Because we hold that the deposition transcripts are records within the meaning of the Act, and because they are not excepted by § 10–7–504, the Court of Appeals' holding on this issue is reversed.

We emphasize, however, that any attempt to discover material in the possession of a governmental attorney that actually constitutes work product will be unsuccessful for the above-mentioned reasons. Therefore, we expressly invite the Legislature to remedy the underinclusiveness of § 10–7–504 by excepting the work product of county and municipal attorneys from public view.

## II.

 MPC next argues that the Court of Appeals erred by relieving the City and County of responsibility for paying its costs incurred in bringing this action. The basis of MPC's argument is Section 10–7–505(g), which provides that

> If the court finds that the governmental entity, or agent thereof, refusing to disclose a record knew that such record was public and willfully refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorney's fees, against the nondisclosing governmental entity.

Although § 10–7–505(g) has not often been judicially construed, it is by its terms a limited award provision. *Abernathy v. Whitley*, 838 S.W.2d 211 (Tenn.App.1992). As this protracted litigation illustrates, the question of whether these deposition transcripts constitute "records" under the Act is by no means a straightforward or simple one. The fact that we have come to a different conclusion than did the Court of Appeals serves to underscore the difficulty of the issue and evidences the divergence of opinion engendered by the issue. Given this fact, we cannot say that the City and County knew that the deposition transcripts were public at the time of the newspaper's demand and yet willfully refused to disclose them, for this would impute to the City and County a duty to foretell an uncertain juridical future. The Court of Appeals' ruling on this issue is hereby affirmed. The costs of this appeal are taxed to the City of Memphis and Shelby County.

REID, C.J., and O'BRIEN and ANDERSON, JJ., concur.

DAUGHTREY, J., not participating.