## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**December 30, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

| | | |
|---|---|---|
| **WANDA FAYE BROWN,** | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Marion Circuit No. 12201 |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JOHN CHESTER BROWN,** | ) | Appeal No. M1998-00554-COA-R3-CV |
| | ) | |
| Defendant/Appellee. | ) | |

APPEAL FROM THE MARION COUNTY CIRCUIT COURT
AT JASPER, TENNESSEE

THE HONORABLE BUDDY D. PERRY, JUDGE

For the Plaintiff/Appellant:                For the Defendant/Appellee:

L. Thomas Austin                            Jerry B. Bible
Dunlap, Tennessee                           Jasper, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCURS:

ALAN E. HIGHERS, J.

DAVID R. FARMER, J.

# OPINION

This is a divorce case. The trial court divided the marital estate and granted the wife alimony *in futuro*. Both the wife and the husband appeal the division of marital property and the award of alimony. We affirm.

Defendant/Appellee John Brown ("Husband") and Plaintiff/Appellant Wanda Brown ("Wife") separated in October 1996 after twenty-five years of marriage. At the time of trial, Husband was fifty-seven years old and Wife was fifty-six. Prior to the parties' separation, Husband worked as a truck driver for MS Carriers. While Wife worked outside the home in the early years of the marriage, the parties later agreed that she would quit her job and stay at home to raise their child. Husband owned a $60,000 home at the time the parties married, but he deeded the home and the surrounding property to himself and Wife as tenants by the entirety soon after they were married. Wife testified at trial that approximately twelve to thirteen thousand dollars which she received by inheritance was used to make improvements to the home during the marriage.

Wife testified at trial that Husband was verbally abusive to both her and the parties' daughter throughout the marriage. The daughter, now an adult, corroborated Wife's allegations of abuse. Husband testified that while he may have occasionally "cussed" Wife, he did not remember threatening Wife or their daughter. Husband claimed that Wife was verbally abusive and rude toward him and toward his family throughout the marriage. Husband admits that he began a relationship with another woman soon after the parties separated. Wife filed for divorce on October 16, 1996, and Husband counter-claimed for divorce on October 31, 1996.

Husband has a high school education. His average gross salary as a truck driver for 1994 and 1995 was $35,515. In the first ten months of 1996, he had a gross salary of $37,427.00. On the day Husband and Wife separated, Husband voluntarily quit his job with MS Carriers. Husband admits that he did not quit because of physical reasons, but testified that he now may have trouble driving a truck at night because he has glaucoma, an eye condition. Husband testified that his glaucoma is kept under control by medication and that he is apparently still physically qualified to drive a truck. Nevertheless, Husband testified that he does not plan to look for a new job in trucking. Husband took a job as a security guard during the parties' separation but was fired when he was jailed for one-hundred twenty days for contempt for failing to pay alimony.

Wife has a high school education but no significant work experience, training, or skills. She is classified as disabled under Social Security Administration guidelines due to a variety of ailments, including back problems. At the time of trial, Wife had no independent source of income. However, after the parties' separation, she earned approximately sixty dollars per week over a period of six weeks sitting with an ailing elderly woman. When the elderly woman began feeling better, Wife stopped sitting with her. Wife claims regular monthly expenses of approximately $1,060.20.

The trial court granted a divorce to Wife on January 8, 1998, and divided the marital assets and debts between the parties. The trial court initially granted Wife a one-half interest in the marital home and the surrounding real estate and awarded the other one-half interest to Wife as alimony *in solido*. Upon reconsideration, however, the trial court awarded Wife a life estate in Husband's one-half interest in the home and real estate and an exclusive right to live in the home. Husband was awarded the right to use his one-half remainder interest if Wife predeceased him.

Wife was awarded a 1994 Ford Tempo and Husband a 1992 Ford Ranger XLT Pickup, with each party individually responsible for any indebtedness. The trial court divided equally all debts, totaling approximately $4,528, as well as all household goods and furnishings.

The trial court awarded to Husband the proceeds from an MS Carrier Retirement Fund, approximately $17,142, the proceeds from an IRA, approximately $3,000, and the proceeds from a $70,000 certificate of deposit, which Husband inherited from his parents. Wife was awarded the proceeds of the parties' savings account, approximately $1,492, and the proceeds of an IRA.

Finally, the trial court ordered Husband to pay Wife $200 per week alimony *in futuro*. The trial court credited Husband $320 per month for an annuity payment assigned to Wife by Husband under a prior court order.

Both parties appeal the trial court's decree. Wife filed a notice of appeal on September 21, 1998. The notice named Wife as appellant, Husband as appellee, and gave the addresses of both parties. It listed Husband's attorney and named the trial court, the trial judge, the number and file date of the judgment from which she appealed, and the court in which the appeal was filed. Wife's attorney did not sign the notice of appeal but signed as surety for the accompanying appeal bond.

Subsequently, Wife filed a motion with the trial court asking that Husband be required to provide Wife a copy of the trial transcript. Wife's motion proposed that Wife pay Husband one-half of the court reporter's appearance fee. The trial court ordered that Wife be allowed to make a copy

of the transcript provided she paid "the per diem of the taking of the transcript and for the cost of the transcript itself" and that she furnish a copy of the transcript to Husband.

On appeal, Husband argues that Wife failed to properly file her notice of appeal. Husband also claims that the trial court erred in granting a divorce to Wife. Both Husband and Wife challenge the trial court's division of property and its alimony award.

We address first Husband's claim that Wife failed to properly her notice of appeal. Husband contends that Wife's notice is insufficient under Rule 11.01 of the Tennessee Rules of Civil Procedure and Rule 24 of the Tennessee Rules of Appellate Procedure because it fails to give the date and the name and signature of Wife's attorney.

Rule 11.01 of the Tennessee Rules of Civil Procedure states that "[a]n unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party." Rule 3(f) of the Tennessee Rules of Appellate Procedure states that a "notice of appeal shall specify the party. . .taking the appeal, shall designate the judgment from which relief is sought, and shall name the court to which the appeal is taken. An appeal shall not be dismissed for informality of form or title of the notice of appeal."

Wife's notice of appeal names Wife as appellant, designates the number and file date of the judgment appealed from, and names the court in which the appeal was filed. Wife's attorney did not sign the notice of appeal, as required under Rule 11.01 of the Tennessee Rules of Civil Procedure but signed the appeal bond accompanying the notice. Under these circumstances, the failure of Wife's attorney to sign the notice of appeal does not prevent this Court from hearing Wife's appeal.

Husband also argues that the trial court erred in ordering Husband to permit Wife to make a copy of the trial transcript, because the order allows Wife a copy of the transcript when she did not assist Husband in paying the court reporter's appearance fee in the first place. Husband argues that the transcript became Husband's attorney work product when Wife refused Husband's request before trial to split the appearance fee.

Under the trial court's order, Wife could make a copy of the trial transcript if she paid "the per diem of the taking of the transcript and for the cost of the transcript itself" and if she furnished a copy of the transcript to Husband. Husband points to no manner in which this order unfairly prejudices him. Moreover, Husband's argument that the trial transcript is "work product" is sophistic at best; a transcript of a public proceeding such as trial cannot be deemed work product.

*See* Tenn. R. Civ. P. 26.02; *Memphis Pub. Co. v. City of Memphis*, 871 S.W.2d 681, 689 (Tenn. 1994) (work product materials must have a veil of confidentiality).

Husband next contends that the trial court erred in granting the divorce to Wife. He maintains that Wife was verbally abusive toward him and his family members. Husband argues that Wife failed to offer sufficient evidence of recent altercations between the parties for which Husband was at fault.

Wife testified at trial that Husband was verbally abusive to her and to the parties' daughter. She stated that Husband's abusive behavior occurred intermittently from the beginning of the parties' marriage up to the time of the parties' separation. The parties' adult daughter corroborated Wife's allegations. In his testimony, Husband admitted that he may have occasionally "cussed" Wife.

Clearly Wife proffered substantial evidence of Husband's verbal abuse. The trial court's determination of fault turned on its assessment of the witnesses' credibility. When the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide that issue. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995). Based on our review of the evidence, we cannot conclude that the trial court erred in awarding the divorce to Wife. The decision of the trial court is affirmed on this issue.

Husband and Wife both challenge the trial court's division of the parties' marital estate. Wife argues that the trial court should have awarded her the parties' entire interest in the marital home and surrounding property. She contends that such an award is necessary to offset the large amount of separate property owned by Husband. Wife argues that her age, lack of training and skills, and physical condition cause her to be less employable and to have a lower earning capacity than Husband. Therefore, she maintains that the trial court should not have assigned to her the parties' indebtedness on her car and one-half of the parties' remaining debts.

Husband argues that the trial court erred in dividing the parties' marital property because most of the property was either properly classified as Husband's separately-owned property or was acquired by gift from Husband's parents or relatives.

Tennessee Code Annotated § 36-4-121(c) requires the trial court to consider several factors in making an equitable division of marital property, including:

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning

- 4 -

capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (1996). Appellate review of a division of marital property is *de novo* upon the record with a presumption of the correctness of the trial court's findings of fact. ***See*** Tenn.R.App.P. 13(d). The trial court's division of property is altered on appeal only if the trial court misapplies the law or if the evidence preponderates against the trial court's factual findings. ***See Wade v. Wade***, 897 S.W.2d 702, 715 (Tenn.App. 1994).

In this case, the primary asset in the marital estate is the marital home and the surrounding property. The only other asset of significant value is the $70,000 certificate of deposit which Husband inherited from his parents. Both parties argue that they should have been awarded sole ownership of the home. The trial court's award to Wife of a life interest in the marital home helps offset the trial court's award of the $70,000 certificate of deposit to Husband as his separate property. The remainder of the marital property was essentially divided equally.

Considering the evidence presented, we cannot conclude evidence preponderated against the trial court's property division. The decision of the trial court is affirmed on this issue.

Finally, Husband and Wife both contest the trial court's award of alimony. Wife argues that the amount of the alimony award is insufficient in light of her regular monthly expenses and Husband's ability to pay. Wife contends that the alimony amount should be based upon Husband's prior gross monthly income as a truck driver.

Husband admits that he quit his job as a truck driver the day the parties separated, but argues that he can work as a truck driver only so long as his glaucoma condition can be controlled. He argues further that his age and limited education will likely prevent him from finding employment with a salary as high as he received as a truck driver. Husband contends that the alimony amount is excessive in light of Wife's work caring for the elderly woman after the parties' separation.

The factors relevant in making an award of alimony are similar to those considered in making an equitable division of marital property. *See* Tenn. Code Ann. §§ 36-4-121(c) (1996) and 36-5-101(d)(1) (Supp. 1999); *see also Dellinger v. Dellinger*, 958 S.W.2d 778, 781 (Tenn.App. 1997). The need of the obligee spouse and the obligor spouse's ability to pay are the most critical factors in awarding alimony. *See Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn.App.1993). In addition, the relative fault of the parties in the breakup of the marriage may be considered. *See Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn.App. 1988).

The trial court is afforded wide discretion concerning the award of alimony, and an appellate court should reverse the trial court's findings only in instances in which this discretion "has manifestly been abused." *See Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn.App. 1989); *Ford v. Ford*, 952 S.W.2d 824, 827 (Tenn.App. 1997).

The fault for the breakup of the marriage and Wife's need are factors favoring an adequate alimony award. The trial court awarded the divorce to Wife, implicitly finding that Husband was at fault for the divorce. However, the amount of the monthly alimony award leaves Wife with a $260.20 shortfall when it is applied to her monthly expenses.

However, Husband's ability to pay a greater amount of alimony is uncertain. Although Husband did not quit his job as a truck driver because of physical infirmity, he now testifies that his glaucoma condition inhibits his ability to drive a truck for a living. He admits that the glaucoma is controlled by medication and that he is apparently still physically qualified to hold a license.

The award of alimony presents a difficult issue. The evidence clearly supports the trial court's implicit finding that Husband was at fault for the divorce. The fact that Husband quit his job as a truck driver the day the parties separated suggests that it was motivated by a desire to avoid paying Wife significant alimony. However, regardless of Husband's original motivation for quitting his truck driver job, the trial court was required to determine Husband's ability to pay alimony as of the date of trial. This determination depended in part on the trial court's assessment of Husband's

credibility on his ability to work as a truck driver or in another position with comparable pay. When the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide that issue. *See McCaleb*, 910 S.W.2d at 415 (Tenn. 1995). We must accord great weight to the trial court's determination of credibility. *See id*.; *see also In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

From our review of the record, and in view of the high standard of review for an award of alimony, we cannot conclude that the trial court's award of alimony in this case amounted to an abuse of discretion. The decision of the trial court is affirmed on this issue.

The decision of the trial court is affirmed. Costs are taxed equally to both parties, for which execution may issue if necessary.

 

 

_____

**HOLLY KIRBY LILLARD, J.**

_____

**CONCUR:**

_____
**ALAN E. HIGHERS, J.**

_____
**DAVID R. FARMER, J.**