# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 23, 2012 Session

## KIMBERLY CUSTIS v. METROPOLITAN NASHVILLE POLICE DEPARTMENT

**Rule 3 Appeal from the Chancery Court for Davidson County**
**No. 11-363-II     Carol L. McCoy, Chancellor**

---

**No. M2011-02169-COA-R3-CV - Filed October 10, 2012**

---

This case involves a claim for attorney's fees and costs under the Public Records Act. The trial court declined to award fees and costs to appellant under Tenn.Code Ann. § 10-7-505(g), which requires a finding of a willful and knowing failure to comply with requests filed pursuant to the Act. We conclude that the trial court did not abuse its discretion in denying an award of attorney's fees and costs because the court made specific findings concerning the willfulness of appellee's failure to respond, and the evidence does not preponderate against those findings. Affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

BEN H. CANTRELL, SR.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Elliot Ozment, Nashville, Tennessee, for the appellant, Kimberly Custis.

Saul Solomon, Lora Barkenbus Fox and Jeff Campbell, Metropolitan Nashville Department of Law, for the appellee, The Metropolitan Nashville Police Department.

## OPINION

## I. FACTS

On October 20, 2010 The Metropolitan Nashville Police Department ("MNPD" or "Department") along with federal immigration officers conducted an investigation at the Clairmont Apartment Complex in Nashville. During this operation, they searched several apartments including the home of Ms. Custis.

On December 2, 2010, Ms. Custis, through counsel, submitted a public records request pursuant to the Tennessee Public Records Act, Tenn.Code Ann. § 10-7-501 *et seq*. On December 7, 2010 the request was sent to various entities including the Chief of Police, the MNPD Gang Unit and the Metropolitan Nashville Department of Law.

Not having received a response by February 22, 2011, Ms. Custis' attorney sent a certified letter to the Department requesting immediate action. This letter was received by the MNPD Central Records Division on February 28. On that day, the Department sent two communications to Ms. Custis. One was from the records division and contained a spreadsheet of 56 service calls to the Clairmont Apartment complex in October of 2010. The other notified Ms. Custis' attorney that dates of birth of individuals listed in the records request would assist the Department in providing further information and records.

Also on February 28, a Lieutenant from the MNPD gang unit contacted Ms. Custis' attorney and stated that he was working with the Metropolitan Department of Law and that he had hoped to provide the requested documents in the following two weeks.

On March 17, appellant filed a Petition for Show Cause Order in the court below. On March 18, appellee provided numerous documents responsive to the request to the appellant and appellant responded with a letter broadening the scope of her request including records pertaining to a MNPD officer. The Petition was served on the Department on March 25. There were several communications between appellant and appellee during March. Ultimately, the complete records production occurred on April 25.

Hearings on the Petition were held on April 25 and July 19. During these two hearings the court admitted evidence from MNPD via affidavit and live testimony. This evidence included testimony of three MNPD officers and a Records Division official. Their testimony showed, among other things, that the initial request was sent to a prior employee and used the wrong name; that members of the Department were new to the process of records requests; the records requested were numerous and located in various locations; that employees had multiple tasks in addition to responding to appellant's request(s) and that MNPD sought advice from the Metropolitan Legal Department as to what could or could not be produced. The records custodians all testified that they responded promptly and that at no time did any of them withhold any documents requested.

On September 13, the court entered a Final Order denying Ms. Custis' Motion for Attorney's fees under Tenn.Code Ann. § 10-7-505(g) and in the Order the court stated that "for the reasons set forth in *Greer* as to what willful is as a requirement under the Open Records Act, I do not find the requisite bad faith or willful element present under the circumstances of this case." Ms. Custis then appealed to this Court.

**III. ANALYSIS**

**A.  The Public Records Act**.

The Tennessee Public Records Act, Tenn.Code Ann. § 10-7-501 *et seq.* (the "Act") provides, in relevant part, that:

> (2)(A) All state, county and municipal records shall, at all times during business hours, which for public hospitals shall be during the business hours of their administrative offices, be open for personal inspection by an citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law.
>
> (B) The custodian of a public record or the custodian's designee shall promptly make available for inspection any public record not specifically exempt from disclosure.  In the event it is not practicable for the record to be promptly available for inspection, the custodian shall, within seven (7) business days:
>
> > (i)  Make the information available to the requestor;
> >
> > (ii)  Deny the request in writing or by completing a records request response form developed by the office of open records counsel.  The response shall include the basis for the  denial; or
> >
> > (iii) Furnish the requestor a completed records request response form developed by th office of open records counsel stating the time reasonably necessary to produce the record or information.

Tenn.Code Ann. § 10-7-503(a)(2).

**B.  Costs and Attorney's Fees.**

The Act also contains the following provision;

> If the court finds that the governmental entity, or agent thereof, refusing to disclose a record, knew that such record was public and willfully refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorney's fees, against the nondisclosing governmental entity.

Tenn.Code Ann. § 10-7-505(g).

The attorney's fee provision of the Act is, "by its terms[,] a limited award provision." *Memphis Publishing Co. v. City of Memphis*, 871 S.W.2d 681, 689 (Tenn.1994). Although our Supreme Court did not elaborate, in *Memphis Publishing Co.*, what it meant by the descriptive term "limited," case law following it has clarified the issue. First, an award of fees under the Act must meet the threshold requirement that the trial court find that the governmental entity or official "knew" the record was public[1] and "willfully" failed to disclose it. *Greer v. City of Memphis*, 356 S.W.3d 917 at 921 (Tenn.Ct.App.2010).

## C. The Standard of Review.

A decision whether to award attorney's fees under Tenn.Code Ann. § 10-7-505(g) is left to the discretion of the trial court, and the appellate courts will not disturb that decision absent an abuse of discretion. *Memphis Publishing Company v. Cherokee Children & Family Services, Inc.,* 87 S.W.3d 67, 80 n. 15 (Tenn.2002). *Tennessean v. City of Lebanon*, 2004 WL 290705 (Tenn.Ct.App.).

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn.2001). A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining." *Id.* The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Id*.

## D. The Bad Faith Standard.

A brief discussion of the development of the "bad faith" standard as it pertains to the fee shifting provision in the Act is helpful. In what appears to the Court to be the first case to address the issue, *Capital Case Res. Ctr. of Tenn. v. Woodall*, 1992 WL 12217 (Tenn.Ct.App.), attorneys for a convicted felon in a federal habeas corpus action requested police and prosecution files from the District Attorney General. The DA refused to produce the records, saying that the habeas action made the files part of a "pending or contemplated" criminal case, and as such were exempt under existing state law. Petitioners sued to compel production of the records and the trial court found in their favor. Petitioners then moved for costs and fees under 505(g). The trial judge denied the motion saying that the "willful" element of the statute indicated the need to show bad faith in a refusal to produce records and

---

[1]There is no dispute in the present case as to the public nature of the records at issue, therefore we will focus only on the analysis of "willful" and "knowing" as used in the Act.

that there had been no such showing. The Court of Appeals agreed and said the "willful and knowing" element was "essentially synonymous with bad faith." The Court further held that while the exception for production of records did not apply to the facts at issue, it could not say that Respondent's arguments to the contrary were not "warranted by existing law or a *good faith* argument for the extension, modification, or reversal of existing law," Id., at 9, citing Rule 11, Tenn.R.Civ.P. (emphasis in original).

The "willful" element was further discussed as "synonymous to a bad faith requirement" in *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn.Ct.App.1999). The *Arnold* Court concluded that "willful" is not simply bad judgment or negligence and clarified "bad faith" as;

> [t]he opposite of 'good faith,' generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. [The t]erm 'bad faith' is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.

*Id* at 789. *See also Contemporary Media, Inc., v. City of Memphis*, 1999 WL 292264, *4 (Tenn.Ct.App.1999), ("[t]he statute expresses a 'knowing and willful' standard which is synonymous with 'bad faith'") *Id.* at 8.; *Greer v. City of Memphis*, 356 S.W.3d 917 (Tenn.Ct.App.2010).

Appellant points to the *Tennessean* case, supra, in which the Court states in a footnote that the Court did "not believe that inserting this [bad faith] element into the statutory standard is consistent with the Act or purpose of the attorney fee provision." *Id*. at 9 n.9. But in 2007, the Tennessee Supreme Court adopted the "bad faith" analysis in deciding whether to award attorney's fees under the Public Records Act. See *Schneider v. Jackson*, 226 S.W.3d 332 (Tenn.2007). In determining that attorney's fees were proper, the Court in *Schneider* noted that respondents willfully failed to provide records and had relied upon a common law precedent that had not been adopted in Tennessee and had in fact been implicitly rejected by state case law. In its analysis the Court stated "[t]he element of 'willfully' required by this statute has been described as synonymous to a bad faith requirement." *Id* at 346 (citing *Arnold*). The Court then proceeded to consider the parties' good faith and bad faith arguments in reaching its decision, determining that the respondent's refusal was "willful" and the award of attorney fees was proper.

It is worth noting, that in all of these cases the Courts were dealing with a respondent's flat denial to produce records and an analysis of the nature of the records themselves. It is our opinion that a mere delay in answering a voluminous records request, such as in the case before us, is a far less egregious act and is less likely to be prejudicial to the party making the request.

*Greer*, supra, is more on point. In that case the records custodian produced the requested documents, but only after an approximate three month delay. The *Greer* Court overturned the trial court's award of attorneys fees applying the bad faith standard, and citing *Schneider* and *Memphis Publishing*. The Court stated that the delay in production was "undisputedly inadvertent" and therefore did not equate to willfulness under the statute. A similar situation exists in the present case. The appellee presented uncontradicted evidence at trial showing that there was inadvertance and that the Department was making efforts to produce the requested documents.

As set out above, the finding of willfulness on the part of the governmental entity requires more than mere negligence, inadvertance or mistake. Rather, the finding of willfulness requires evidence that the withholding entity acted consciously in furtherance of a dishonest purpose. The trial court specifically mentioned *Greer* and the other cases when deciding that there was no bad faith, i.e. no "willfulness" on the part of MNPD which resulted in the delay in producing the records. The trial court based that finding on evidence it heard from the Department itself. We therefore find that the record supports the trial court's determination that appellant was not entitled to an award of attorney's fees.

## IV. CONCLUSION

The order of the trial court is affirmed. We remand this case to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Kimberly Custis.

_____
BEN H. CANTRELL, SR. JUDGE

-6-