# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 16, 2023 Session

## CLATA RENEE BREWER ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 23-0538-III          I'Ashea L. Myles, Chancellor**

———————————————————

### No. M2023-00788-COA-R3-CV

———————————————————

This action involves various requests directed to the Metropolitan Government of Nashville and Davidson County ("Metro") for the release of records, pursuant to the Tennessee Public Records Act ("TPRA"), related to a school shooting that occurred at a private school in Nashville. Before making a determination concerning release of the records, the trial court allowed certain interested parties to intervene in the action pursuant to Tennessee Rule of Civil Procedure 24.02. The parties requesting the records have appealed that ruling pursuant to Tennessee Rule of Civil Procedure 24.05.[1] Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Paul J. Krog, Brentwood, Tennessee; Nicholas R. Barry, Washington, D.C.; John I. Harris, III, and Douglas R. Pierce, Nashville, Tennessee; and Richard L. Hollow, Knoxville, Tennessee, for the appellants, Clata Renee Brewer; James Hammond; Tennessee Firearms Association, Inc.; Michael P. Leahy; Star News Digital Media, Inc.; The Tennessean; Rachel Wegner; and Todd Gardenhire.

Wallace W. Dietz, Director of Law; Lora Barkenbus Fox, Associate Director of Law; Cynthia E. Gross; and Phylinda Ramsey, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County.

---

[1] Tennessee Rule of Civil Procedure 24.05 provides: "Any order granting or denying a motion to intervene filed pursuant to this rule shall be a final judgment for purposes of Tenn. R. App. P. 3."

Eric G. Osborne, William L. Harbison, Christopher C. Sabis, C. Dewey Branstetter, Ryan T. Holt, Micah N. Bradley, Frances W. Perkins, Hunter C. Branstetter, William D. Pugh, Edward M. Yarbrough, Sara D. Naylor, and Hal Hardin, Nashville, Tennessee, for the appellees, Parents of Minor Covenant Students Jane Doe and John Doe.

Rocklan W. King, III; F. Laurens Brock; and Ashley H. Harbin, Nashville, Tennessee, for the appellee, Covenant Presbyterian Church of Nashville.

Peter F. Klett and Autumn L. Gentry, Nashville, Tennessee, and Nader Baydoun and Stephen Knight, Brentwood, Tennessee, for the appellee, The Covenant School.

Samuel P. Funk, James K. Vines, Grace A. Fox, and Evan S. Rothey, Nashville, Tennessee, for Amici Curiae, Franklin Road Academy, Montgomery Bell Academy, Oak Hill School, and St. Paul Christian Academy.

**OPINION**

I.  Factual and Procedural Background

On March 27, 2023, a tragic school shooting occurred in Nashville at The Covenant School ("the School"), a private school operated by Covenant Presbyterian Church of Nashville ("the Church").  Six people were killed, including three children and three adults.  The shooter was killed at the scene after opening fire on responding Metro officers.  A subsequent search of the shooter's car and home by Metro apparently revealed the existence of a "manifesto" and additional writings by the shooter, as well as other evidence concerning the shooter's thoughts and plans, all of which were confiscated by Metro officers.

In the weeks following the incident, various individuals sought to gain access to these documents in Metro's possession, including Todd Gardenhire, Chairperson of the Tennessee Senate Judiciary Committee; *The Tennessean*, a Nashville-based newspaper; Rachel Wegner, a reporter for *The Tennessean*; James Hammond and the Tennessee Firearms Association, Inc.; Clata Renee Brewer (in conjunction with the National Police Association); Star News Digital Media, Inc. ("Star News"); and the chief executive officer of Star News, Michael Leahy (collectively, "Petitioners").  When their requests for access to the Metro records concerning the shooting were denied, Petitioners filed petitions in various Davidson County courts seeking to gain access to the records.  These petitions were filed pursuant to Tennessee Code Annotated § 10-7-503 (Supp. 2023) of the TPRA, which provides in relevant part that "[a]ll state, county and municipal records shall . . . be open for personal inspection by any citizen of this state."  The petitions were subsequently transferred to the Davidson County Chancery Court, Part III ("trial court"), and consolidated into one action.

- 2 -

Meanwhile, on May 12, 2023, the Church filed a motion to intervene, stating that it shared a physical facility with the School. In the motion, the Church asserted that it should be allowed to intervene in the pending TPRA actions, pursuant to Tennessee Rule of Civil Procedure 24.01, because the records in Metro's custody contained confidential information concerning facility schematics and employees of the Church. The School filed a motion to intervene a few days later on May 15, 2023, also predicated on Rule 24.01 and citing largely the same reasons supporting intervention as contained in the Church's motion. On May 17, 2023, a group of parents of students who were attending the School at the time of the shooting ("the Parents") also filed a motion to intervene. The Parents stated that they sought to intervene to oppose disclosure of the records concerning the shooting in order to prevent the infliction of additional trauma on the School's students and their families.

In response to the petitions seeking access to the records, Metro filed declarations on May 17, 2023, stating that Metro was conducting an ongoing criminal investigation to determine whether the shooter had assistance in the criminal acts. As such, Metro claimed that Tennessee Rule of Criminal Procedure 16 prevented disclosure of the records.

The trial court conducted a hearing regarding the motions to intervene filed by the Church, the School, and the Parents (collectively, "Intervenors") on May 22, 2023. The trial court subsequently entered an order on May 24, 2023, allowing the permissive intervention of the Church and the School predicated on Tennessee Rule of Civil Procedure 24.02. The court noted that these parties sought to protect private information to which Petitioners would not normally have access inasmuch as the Church and the School were private entities. The court also relied upon the affidavits filed by Metro establishing that an active, ongoing criminal investigation existed regarding potential co-conspirators.

In its order, the trial court explained that Rule 24.02 allowed permissive intervention when, *inter alia*, a movant's claim or defense maintained common questions of law or fact with the main action. The court reasoned that the Church and the School maintained common questions of law and fact with the parties because, like Metro, the Church and the School had claimed that irreparable injury would occur if there were public access to the private information contained in the records at issue. The court therefore determined that the requirements of Rule 24.02 had been satisfied and granted intervention. The court directed the Church and the School to file briefs detailing the nature of their claims and defenses in this matter.

The trial court concomitantly entered a second order, granting the Parents' motion to intervene and allowing the Parents to proceed under a pseudonym upon the filing of a proper affidavit to be filed under seal. The court noted that the Parents' claims were based on the Victims' Bill of Rights and Article I, § 35 of the Tennessee Constitution.

- 3 -

The court determined that because the Parents' children were victims of a crime, the Parents had a sufficiently personal stake in the litigation to establish standing to intervene. The court also determined that the Parents, on behalf of their children, shared common questions of law and fact with the parties. The court thus granted permissive intervention pursuant to Rule 24.02 and directed the Parents to file a brief setting forth their claims and defenses.

The Church subsequently filed a brief in support of its request that the trial court deny disclosure of the records at issue. In its brief, the Church explained that the Church and the School shared facilities, including a security system, and that employees of the Church worked in those facilities. In fact, the Church claimed that one of the shooting victims was an employee of the Church. The Church stated as further bases for preventing disclosure that (1) Metro was conducting an ongoing criminal investigation; (2) school security records are an exception to the TPRA pursuant to Tennessee Code Annotated § 10-7-504; and (3) the records contained personal information with respect to employees of the Church, which information should be protected based on the employees' right to privacy.

The Parents filed a similar brief on May 30, 2023, stating that the records should not be disclosed by reason of the school security exception to the TPRA and the fact that the records contained personal information concerning minors. The Parents also argued that releasing the shooter's manifesto could lead to "copycat" crimes. The School likewise filed a brief on May 30, 2023, relying on the school security exception to the TPRA. Metro also filed a brief, asserting that the records sought should not be disclosed due to the ongoing criminal investigation and also because they were not "public records" as defined in the TPRA inasmuch as they pertained to school security and contained personal information regarding minors and deceased victims.

Meanwhile, Petitioners filed separate notices of appeal, pursuant to Tennessee Rule of Civil Procedure 24.05, regarding the trial court's grant of the motions to intervene. Shortly thereafter, Petitioners filed an emergency motion seeking a stay in the trial court, arguing that the pending appeal deprived the trial court of jurisdiction in the matter. The trial court denied this motion by order entered on June 12, 2023, determining that no reason existed to stay the entire proceeding when only the issue of intervention had been appealed. On June 21, 2023, this Court entered an order expediting the appeal and providing a truncated briefing schedule. This Court also stayed the underlying trial court proceedings, reasoning that the matter should not move forward until the proper parties to the action had been identified.

## II. Issues Presented

Petitioners present the following issues for our review, which we have restated slightly:

1.   Whether the trial court erred by concluding that the TPRA authorized the intervention of third parties who are neither record requesters nor government custodians.

2.   Whether the trial court lacked subject matter jurisdiction to permit intervention by parties without standing.

3.   Whether the trial court erred by allowing Intervenors to intervene permissively.

4.   Whether Petitioners are entitled to attorney's fees incurred on appeal.

## III.  Standard of Review

As our Supreme Court has previously explained, a trial court's decision concerning the propriety of a party's permissive intervention is reviewed for an abuse of discretion. *See State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000).  The High Court has further explained that a court abuses its discretion "when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

To the extent that this action involves questions of statutory interpretation related to the TPRA, our Supreme Court has instructed:

Statutory construction is a question of law that is reviewable on a de novo basis without any presumption of correctness.  *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802 (Tenn. 2000); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998).  When dealing with statutory interpretation, well-defined precepts apply.  Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope.  *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002).  In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing.  *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005).  When a statute is clear, we apply the plain meaning without complicating the task.  *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).  Our obligation is simply to enforce the written language.  *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006).  It is only

when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009).

## IV. Construction of the TPRA

Petitioners posit that the TPRA does not permit the intervention of a third party because its provisions appear to contemplate solely the governmental entity with custody of the records and the person or entity seeking to gain access to the records as parties. Petitioners therefore argue that the trial court improperly construed the TPRA's language by allowing intervention. Upon our thorough review of the applicable law, we disagree.

As our Supreme Court has previously clarified regarding the purpose of the TPRA:

> For more than a century, Tennessee courts have recognized the public's right to inspect governmental records. *See*, *e.g.*, *State ex rel. Wellford v. Williams*, 110 Tenn. 549, 75 S.W. 948, 959 (1903) (holding that Memphis residents concerned about the city's financial condition had the right to inspect the city's records). In 1957, the General Assembly codified this right of public access by enacting the state's first public records statutes. *See Swift v. Campbell*, 159 S.W.3d 565, 571 (Tenn. Ct. App. 2004) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). The Public Records Act has been amended over the years, but its intent has remained the same—to facilitate the public's access to government records. *Swift*, 159 S.W.3d at 571 (citing [*Memphis Publ'g Co. v.*] *Cherokee Children & Family Servs., Inc.*, 87 S.W.3d [67,] 74 [(Tenn. 2002)]; *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 687-88 (Tenn. 1994)); *see also Cole v. Campbell*, 968 S.W.2d 274, 275 (Tenn. 1998) (noting that "[t]his Court has upheld this legislative mandate on numerous occasions"). The Public Records Act has a noble and worthwhile purpose

by providing a tool to hold government officials and agencies accountable to the citizens of Tennessee through oversight in government activities.

\* \* \*

There is a presumption of openness for government records. *Memphis Publ'g Co.*, 871 S.W.2d at 684. Custodians of the records are directed to promptly provide for inspection any public record not exempt from disclosure. The Public Records Act directs the courts to broadly construe the Act "so as to give the fullest possible access to public records." The Act allows a person whose request for public records is denied to file suit and seek judicial review of the governmental entity's denial. The governmental entity must prove justification for nondisclosure by a preponderance of the evidence.

*Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 864 (Tenn. 2016) (footnotes omitted).

With regard to the inspection of public records, the pertinent section of the TPRA, Tennessee Code Annotated § 10-7-503(a), provides:

(2)(A) All state, county and municipal records shall, at all times during business hours . . . be open for personal inspection by any citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law.

(B) The custodian of a public record or the custodian's designee shall promptly make available for inspection any public record not specifically exempt from disclosure. In the event it is not practicable for the record to be promptly available for inspection, the custodian shall, within seven (7) business days:

(i) Make the public record requested available to the requestor;

(ii) Deny the request in writing or by completing a records request response form developed by the office of open records counsel. The response shall include the basis for the denial; or

(iii) Furnish the requester in writing, or by completing a records request response form developed by the office

- 7 -

of open records counsel, the time reasonably necessary
to produce the record or information.

(3)     Failure to respond to the request as described in subdivision (a)(2)
shall constitute a denial and the person making the request shall have
the right to bring an action as provided in § 10-7-505.

The TPRA also provides a list of certain records that are confidential and not subject to disclosure.  *See* Tenn. Code Ann. § 10-7-504 (Supp. 2023); *see also Tennessean*, 485 S.W.3d at 865 (detailing a list of statutory exceptions).  Exceptions to the TPRA's disclosure requirements include, *inter alia*:  (1) information related to school security (subsection (p)(1)), (2) information concerning victims of criminal acts who are minors (subsection (t)(1)), and (3) video taken by a law enforcement body camera that depicts minors within a school (subsection (u)(1)).  In addition, pursuant to the TPRA's general exception for records protected from disclosure by "state law," *see* Tenn. Code Ann. § 10-7-503(a)(2)(A), the Supreme Court has explained that governmental entities are not required to disclose records related to a pending criminal investigation/action in accordance with Tennessee Rule of Criminal Procedure 16.  *See Tennessean*, 485 S.W.3d at 871.

With respect to the procedure for obtaining access to public records, Tennessee Code Annotated § 10-7-505 (2020) states in pertinent part:

a)     Any citizen of Tennessee who shall request the right of personal
inspection of any state, county or municipal record as provided in §
10-7-503, and whose request has been in whole or in part denied by
the official and/or designee of the official or through any act or
regulation of any official or designee of any official, shall be entitled
to petition for access to any such record and to obtain judicial review
of the actions taken to deny the access.

(b)     Such petition shall be filed in the chancery court or circuit court for
the county in which the county or municipal records sought are
situated, or in any other court of that county having equity
jurisdiction.  In the case of records in the custody and control of any
state department, agency or instrumentality, such petition shall be
filed in the chancery court or circuit court of Davidson County; or in
the chancery court or circuit court for the county in which the state
records are situated if different from Davidson County, or in any
other court of that county having equity jurisdiction; or in the
chancery court or circuit court in the county of the petitioner's
residence, or in any other court of that county having equity
jurisdiction.  Upon filing of the petition, the court shall, upon request

of the petitioning party, issue an order requiring the defendant or respondent party or parties to immediately appear and show cause, if they have any, why the petition should not be granted. A formal written response to the petition shall not be required, and the generally applicable periods of filing such response shall not apply in the interest of expeditious hearings. The court may direct that the records being sought be submitted under seal for review by the court and no other party. The decision of the court on the petition shall constitute a final judgment on the merits.

(c)      The burden of proof for justification of nondisclosure of records sought shall be upon the official and/or designee of the official of those records and the justification for the nondisclosure must be shown by a preponderance of the evidence.

(d)      The court, in ruling upon the petition of any party proceeding hereunder, shall render written findings of fact and conclusions of law and shall be empowered to exercise full injunctive remedies and relief to secure the purposes and intentions of this section, and this section shall be broadly construed so as to give the fullest possible public access to public records.

In this matter, Petitioners filed their petitions seeking access to the subject records following Metro's denial of their requests to review them. The petitions were subsequently transferred to the trial court and consolidated into one action. Meanwhile, Intervenors filed their motions to intervene, which the trial court granted.[2]

On appeal, Petitioners argue that allowing intervention was improper because the TPRA's provisions do not expressly allow for the intervention of a third party. Petitioners assert that the language of the TPRA contemplates a bilateral procedure with only two "sides"—the governmental entity that maintains custody of the records and the party who seeks disclosure of the records. By contrast, Intervenors contend that the TPRA's provisions neither forbid intervention nor alter the Tennessee Rules of Civil Procedure concerning intervention. We agree with Intervenors.

As Petitioners concede in their brief, this Court must seek to construe statutes "in a way that avoids conflict and facilitates harmonious operation of the law." *Lee Med.*, 312

---

[2] Petitioners argue in their appellate brief that Intervenors were improperly allowed to intervene with regard to <u>all</u> of the Petitioners' requests because all of the cases had not yet been consolidated at the time Intervenors' motions were filed. Inasmuch as Petitioners failed to raise this issue in their statement of the issues, we determine that it has been waived. *See Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) ("[A]n issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4).").

S.W.3d at 527. Of course, "rules governing practice and procedure in the trial and appellate courts of Tennessee were promulgated by the General Assembly and the Supreme Court . . . [and] have the force and effect of law." *Frye v. Blue Ridge Neuroscience Ctr., P.C.*, 70 S.W.3d 710, 713 (Tenn. 2002) (quoting *Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn. 1980)). Moreover, "[w]e presume that the General Assembly was aware of its prior enactments and knew the state of the law at the time it passed the legislation." *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 701 (Tenn. 2009). Accordingly, "courts will not construe statutes to change existing law more than a statute itself declares or necessarily implies." *Winter v. Smith*, 914 S.W.2d 527, 538 (Tenn. Ct. App. 1995).

As both Petitioners and Intervenors point out, the TPRA clearly provides for an expedited hearing and a truncated procedure with regard to disputes concerning the disclosure of public records. *See* Tenn. Code Ann. § 10-7-505; *Moncier v. Harris*, No. E2016-00209-COA-R3-CV, 2018 WL 1640072, at *11 (Tenn. Ct. App. Apr. 5, 2018) ("The Legislature clearly intended for the expeditious resolution of petitions under section 10-7-505 and expressly removed time restraints that normally allow defendants time to evaluate a case and prepare a defense."). Therefore, relative to a typical pre-trial discovery process, the *Moncier* Court concluded that "the plain language of the statute precludes such a procedure." *See* 2018 WL 1640072, at *11 ("[I]t would make no sense to conclude that our General Assembly intended to allow a plaintiff . . . to conduct document discovery in preparation for a show cause hearing [in a TPRA action].").

With regard to intervention, however, the TPRA neither expressly declares nor "necessarily implies" that intervention is disallowed. Instead, the TPRA is silent concerning intervention. Presuming that the Legislature was aware of Tennessee Rule of Civil Procedure 24 and its provisions concerning intervention, *see Highwoods Properties*, 297 S.W.3d at 701, and construing the TPRA so as not to change the state of the law more than the statute declares or implies, *see Winter*, 914 S.W.2d at 538, we determine that the Legislature did not intend to completely disregard all procedural rules when enacting the TPRA. *See*, *e.g.*, *Tennessean*, 485 S.W.3d at 870. In other words, the implications of the TPRA concerning document discovery, as recognized in *Moncier*, *see* 2018 WL 1640072, at *11, do not lead to the conclusion that none of the procedural rules would be applicable in a TPRA action.

Instead, we determine that the Legislature intended to provide an expeditious procedure concerning the disclosure of public records and that Rule 24's provisions respecting intervention do not run counter to that purpose. As such, we conclude that the trial court properly considered Intervenors' requests for intervention in this TPRA action pursuant to the requirements of Rule 24.

In further support of this conclusion, we observe that intervention has been allowed in prior TPRA cases that have come before Tennessee's appellate courts. *See*

- 10 -

*Tennessean*, 485 S.W.3d at 859 (noting that the trial court had allowed the intervention of a crime victim); *Griffin v. City of Knoxville*, 821 S.W.2d 921, 921 (Tenn. 1991) (noting that the trial court had permitted the intervention of the deceased's widow); *Public.Resource.Org v. Matthew Bender & Co.*, No. M2022-01260-COA-R3-CV, 2023 WL 7408939, at *1 (Tenn. Ct. App. Nov. 9, 2023) (noting that the trial court had allowed the intervention of the Tennessee Code Commission). Although the intervention issue as presented in this matter was not specifically raised in those cases on appeal, we find it instructive that our Supreme Court considered the intervening party's claim in *Tennessean* without providing any indication that the Court found her to be an improper party to the action. *See* 485 S.W.3d at 873-874. In fact, none of those authorities hinted at a conclusion that the trial courts had erred by allowing intervention. We likewise determine in this matter that the trial court did not err by concluding that the TPRA allowed the intervention of third parties who are neither a record requester nor the government custodian.

V. Standing and Subject Matter Jurisdiction

Petitioners claim that Intervenors lacked standing to intervene in this action because the Legislature, in enacting the TPRA, created the cause of action and designated who may file it: parties who are seeking the disclosure of public records. Petitioners argue that because standing is conferred by the statute, it is "interwoven" with subject matter jurisdiction and "becomes a jurisdictional prerequisite." *See Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004). Petitioners thus assert that because Intervenors were not seeking the disclosure of records, the trial court had no jurisdiction to consider their petitions. By contrast, Intervenors contend that they maintained standing to intervene because they possessed a "sufficiently personal stake in the outcome of the controversy to warrant the exercise of the court's power on [their] behalf." *See Shelby Cnty. Deputy Sheriff's Ass'n v. Gilless*, 972 S.W.2d 683, 685 (Tenn. Ct. App. 1997).

Petitioners' argument contains one fatal flaw—the TPRA actions at issue herein <u>were</u> filed by parties seeking the disclosure of public records. Moreover, the statute specifically provides that such actions "shall be filed in the chancery court or circuit court for the county in which the county or municipal records sought are situated[.]" Tenn. Code Ann. § 10-7-505(b). As such, the trial court clearly maintained subject matter jurisdiction over this matter. The fact that Intervenors sought to intervene in the action would not strip the court of its statutory grant of subject matter jurisdiction concerning TPRA disputes.

Furthermore, we determine that Intervenors maintain standing in this matter. As this Court has previously explained:

> To establish constitutional standing in Tennessee courts, a plaintiff must establish three elements:

> 1) a distinct and palpable injury; that is, an injury that is not conjectural, hypothetical, or predicated upon an interest that a litigant shares in common with the general public; 2) a causal connection between the alleged injury and the challenged conduct; and 3) the injury must be capable of being redressed by a favorable decision of the court.[3]

*Fisher v. Hargett*, 604 S.W.3d 381, 396 (Tenn. 2020). To determine whether Plaintiffs have standing to bring this case, we must examine the particular allegations of their complaint and evaluate whether they are entitled to adjudicate the claims. *Id*.; *Howe v. Haslam*, No. M2013-01790-COA-R3-CV, 2014 WL 5698877, at *6 (Tenn. Ct. App. Nov. 4, 2014) (citing *Petty v. Daimler/Chrysler Corp*., 91 S.W.3d 765, 768 (Tenn. Ct. App. 2002)).

> The question of whether a party has standing should not be confused with the merits of the claim; accordingly, a weak claim does not equate to a lack of standing. *Metro. Gov't of Nashville & Davidson Cnty. v. Tenn. Dep't of Educ*., 645 S.W.3d 141, 148-49 (Tenn. 2022). Tennessee courts' standing analysis is instead directed towards determining "'whether a party has a sufficiently personal stake in a matter at issue to warrant a judicial resolution of the dispute,'" barring those whose rights or interests have not been affected from bringing suit. *Metro. Gov't of Nashville v. Bd. of Zoning Appeals of Nashville*, 477 S.W.3d 750, 755 (Tenn. 2015) (quoting *State v. Harrison*, 270 S.W.3d 21, 27-28 (Tenn. 2008)).

*Rutan-Ram v. Tenn. Dep't of Children's Servs*., No. M2022-00998-COA-R3-CV, 2023 WL 5441029, at *7 (Tenn. Ct. App. Aug. 24, 2023).

As the trial court noted in its orders, Intervenors asserted that they would suffer a distinct and palpable injury by the disclosure of the records sought and that their injury was not predicated upon an interest that they share with the general public. In addition, Intervenors also asserted that a causal connection existed between release of the records and the injury they were in immediate danger of suffering, which injury could be addressed by the trial court's determination concerning disclosure. Accordingly, Intervenors have demonstrated, based on the allegations contained in their pleadings, a "sufficiently personal stake in a matter at issue to warrant a judicial resolution of the

---

[3] The "injury" required in the first element has also been described as an "immediate danger." *See Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001).

dispute." *See id*. We determine that Petitioners' issue concerning standing and subject matter jurisdiction is without merit.[4]

## VI. Permissive Intervention

The trial court evaluated Intervenors' motions to intervene pursuant to Tennessee Rule of Civil Procedure 24.02, which provides:

> Upon timely motion any person may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when a movant's claim or defense and the main action have a question of law or fact in common.

The trial court determined that Intervenors had demonstrated that they shared common questions of law or fact with the parties and allowed their intervention. This Court reviews such decision for an abuse of discretion. *See Brown & Williamson Tobacco Corp.*, 18 S.W.3d at 191.

Petitioners posit that Intervenors cannot share a common question of law or fact with the parties, as contemplated by Rule 24.02, because Intervenors do not possess a "claim" or a "defense" in the TPRA action. We find this argument unavailing. Metro, the responding governmental entity with custody of the records at issue, asserted certain defenses to the TPRA action based on the statutory exceptions found in Tennessee Code Annotated § 10-7-504 and Tennessee Rule of Criminal Procedure 16. Intervenors then filed briefs with the trial court detailing their positions concerning the potential disclosure of the records in question, some of which align with Metro's defenses.[5] As such, we conclude that the trial court properly determined that the "movant's claim or defense and the main action have a question of law or fact in common." *See* Tenn. R. Civ. P. 24.02. We find Petitioners' argument that the trial court incorporated an erroneous legal standard to be unavailing.

---

[4] We acknowledge Petitioners' postulate that Intervenors have filed what Petitioners refer to as a "reverse public records suit" and that such an action has not been allowed pursuant to the federal Freedom of Information Act ("FOIA") and should not be allowed in a TPRA action. However, Petitioners have cited no authority based in Tennessee law to support any of their assertions in this regard. Petitioners concede that the TPRA is "distinct from FOIA and the open records law of other states." *See Schneider v. City of Jackson*, 226 S.W.3d 332, 343 (Tenn. 2007). This being the case, we find Petitioners' arguments predicated on federal law respecting FOIA to be unavailing.

[5] Although Petitioners postulate that Intervenors failed to file a "pleading setting forth the claim or defense for which intervention is sought," as required by Tennessee Rule of Civil Procedure 24.03, our review of the record demonstrates that Intervenors filed briefs detailing their positions with respect to the records disclosure as directed by the trial court's orders. These briefs clearly set forth Intervenors' points regarding their intervention in the TPRA action and comport with the "pleading" requirement of Rule 24.03.

We find the Supreme Court's opinion in *Ballard v. Herzke*, 924 S.W.2d 652 (Tenn. 1996), instructive. In *Ballard*, the underlying lawsuit concerned claims of breach of fiduciary duty, conspiracy, outrageous conduct, and other civil causes of action. *Id*. at 655. During the proceedings, the trial court imposed a protective order and placed certain discovery responses filed by the defendant retirement community and its corporate owner under seal. *Id*. The plaintiffs in the suit filed motions seeking to modify or dissolve the protective order, and a Tennessee newspaper filed a motion to intervene, also requesting that the trial court rescind the protective order. *Id*. at 656. The trial court allowed the newspaper to intervene, and this Court granted an extraordinary appeal. *Id*. During that appeal, this Court determined that the trial court had abused its discretion in allowing the newspaper to intervene. *Id*. at 657.

The Supreme Court granted permission to appeal in *Ballard* and considered the issue of whether the newspaper's intervention was proper. *Id*. When analyzing the intervention issue, the High Court explained:

> Permissive intervention is governed by Tennessee Rule of Civil Procedure 24.02, which provides in pertinent part as follows:
>
> > Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising discretion the court shall consider whether or not the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
>
> If the would-be intervenor's claim or defense contains a question of law or fact that is also raised by the main action then the requirement of the rule has been satisfied and the trial court is afforded discretion to permit intervention.
>
> * * *
>
> [I]ntervention "is not dependent on, nor is it determined by, the status or identification of the parties nor the nature of the dispute." Moreover, the question of intervention is collateral to, and does not have any bearing on, the primary issue—modification of the protective order. What is necessary is that the proposed intervenor demonstrate that its claims have "a question of law or fact in common" with the main action.

- 14 -

Here, as in all such cases, by virtue of the fact that the media entities challenge the validity of the protective order entered in the main action, they meet the requirement of Rule 24.02, that their claim have "a question of law or fact in common" with the main action. Nonetheless, the interest of the plaintiffs and the intervenors is not identical. The plaintiffs seek access to enhance their ability to prepare for trial. They are not attempting to gain access for public dissemination. Were the plaintiffs to settle this case, their interest in modifying the protective order would end. By contrast, the intervenors seek to gain access on behalf of the general public in order to disseminate the information through the media. Therefore, though the basic interest is the same, that of overturning the protective order, the interests are not identical, and intervention is appropriate.

Where, as here, a common question of law or fact is established, the decision to allow intervention is a matter entrusted to the trial court's discretion, and the decision should not be reversed by an appellate court absent a showing of abuse of discretion.

*Ballard*, 924 S.W.2d at 657-58 (other internal citations omitted).

As the *Ballard* Court clarified, intervening parties can have "a question of law or fact in common" with the main action despite the fact that the question may be collateral to the primary issue in the case or that the status of the parties is not precisely the same. *See id*; *see also In re Estate of Thompson*, 636 S.W.3d 1, 8 (Tenn. Ct. App. 2021). In the case at bar, Intervenors raised various defenses or objections to the disclosure of the subject records that aligned with the defenses raised by Metro in the main TPRA action.[6] As such, we must next examine whether the trial court's discretion was abused when granting intervention.

---

[6] Petitioners argue that the various Tennessee victims' rights laws (Art. I, § 35 of the Tennessee Constitution; Tenn. Code Ann. §§ 40-38-101-119; and Tenn. Code Ann. § 40-38-301(a)) do not confer a right to intervene and that "Intervenors seek to rewrite the TPRA to include a victims' rights exception that does not exist." However, we do not need to address this argument because it is not determinative herein. Intervenors have raised several defenses that align with the defenses promulgated by Metro, including (1) the existence of an ongoing criminal investigation, (2) the TPRA exception concerning school security information, and (3) the TPRA exception concerning information relating to crime victims who are minors. As such, Intervenors have established the requisite "question of law or fact in common" for the purposes of Rule 24.02 intervention, which is the determinative question on appeal. To the extent that the trial court determined interpretation of the Tennessee victims' rights laws to be significant to the intervention issue, we note that this Court can affirm the trial court even if it reached the correct result for a different reason. *See Torres v. Bridgestone/Firestone N. Am. Tire, LLC*, 498 S.W.3d 565, 577 (Tenn. Ct. App. 2016); *Biles v. Roby*, No. W2016-02139-COA-R3-CV, 2017 WL 3447910, at *6, n.3 (Tenn. Ct. App. Aug. 11, 2017).

- 15 -

We reiterate that a court abuses its discretion "when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med.*, 312 S.W.3d at 524. We find no such abuse of discretion by the trial court herein. The trial court applied the correct legal standards, as outlined above. Moreover, the trial court neither reached an illogical or unreasonable decision nor based its decision on a clearly erroneous assessment of the evidence. Accordingly, we determine that the trial court's decision allowing Intervenors to intervene in the instant action should be affirmed.

We acknowledge Petitioners' argument that Intervenors' interests would be adequately represented by Metro in the TPRA action (an argument that seems to belie their position that no common questions existed between Metro and Intervenors); however, we do not find this argument persuasive. Although Metro did raise many of the same defenses to the TPRA action as advanced by Intervenors, there can be no guarantee that Metro would continue to oppose disclosure if the criminal investigation were to conclude. As such, we determine that the trial court properly allowed interventions so that Intervenors could represent their own interests in this action.

## VII. Attorney's Fees

Finally, Petitioners assert that they are entitled, pursuant to Tennessee Code Annotated § 10-7-505(g), to recover their attorney's fees incurred in obtaining public records that have been willfully withheld. This statutory section provides:

> If the court finds that the governmental entity, or agent thereof, refusing to disclose a record, knew that such record was public and willfully refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorneys' fees, against the nondisclosing governmental entity. In determining whether the action was willful, the court may consider any guidance provided to the records custodian by the office of open records counsel as created in title 8, chapter 4.

In this appeal, the only issues properly before this Court concern the trial court's grant of intervention to Intervenors—any issues concerning the disclosure of the sought records had not yet been adjudicated at the time this appeal was filed and are not before this Court. Despite this fact, Petitioners assert that "this Court should direct that upon remand the Petitioners recover their reasonable attorney's fees incurred on appeal if they become entitled to such fees in the action below" (emphasis added). However, inasmuch as Petitioners made the decision to file this appeal concerning intervention and were unsuccessful in obtaining the relief they sought, we decline to provide the requested directive to the trial court regarding an award of fees incurred in this appeal.

- 16 -

## VIII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment allowing intervention. Costs on appeal are assessed to the appellants, Clata Renee Brewer; James Hammond; Tennessee Firearms Association, Inc.; Michael P. Leahy; Star News Digital Media, Inc.; The Tennessean; Rachel Wegner; and Todd Gardenhire. We remand this matter to the trial court for further proceedings.


s/Thomas R. Frierson, II

_____

THOMAS R. FRIERSON, II, JUDGE